IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SCOTT PAUL MADLOCK, § | | |
| TDCJ-CID No. 2074132, § | | |
| Petitioner, § | | |
| § | | |
| v. § | SA-18-CA-01083-OLG (HJB) | |
| § | | |
| LORIE DAVIS, Director, § | | |
| Texas Department of Criminal § | | |
| Justice, Correctional Institutions § | | |
| Division, § | | |
| Respondent. § | | |

### RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Scott Paul Madlock was convicted of four counts of aggravated sexual assault of a child younger than six and one count of indecency with a child and was sentenced to life imprisonment by a Texas court for each offense. His petition should be denied and dismissed with prejudice because his claim lacks merit.

### JURISDICTION

Madlock seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties, as Madlock was convicted within this Court's jurisdiction.

### PETITIONER'S ALLEGATIONS

The Respondent (Director) understands Madlock to claim that the trial court erred when it overruled his objection and admitted into evidence incriminating statements that he had made to investigators in violation of *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966). ECF 1, at 6; ECF 2.

## GENERAL DENIAL

The Director denies all of Madlock's assertions of fact except those supported by the record or specifically admitted herein. In addition, the Director opposes any future, substantive motions filed by Madlock and will respond to any such motions only upon order of the Court.

## STATEMENT OF THE CASE

### I. Procedural History

The Director has lawful custody of Madlock pursuant to the judgments and sentences of the 207th Judicial District Court of Comal County, Texas, in cause number CR2015-191, styled *The State of Texas v. Scott Paul Madock*. SHCR-01, at 109-23.[1] Madlock was charged by indictment with four counts of aggravated sexual assault of a child younger than 6 and one count of indecency with a child. *Id.* at 104-07. He entered not guilty pleas and was tried by a jury. *Id.* at 109, 113, 116, 119. Madlock was found guilty of each count and was sentenced by the court to four life sentences, to be serve consecutively.[2] *Id.*

Madlock's convictions were affirmed by the Thirteenth Court of Appeals of Texas on January 11, 2018. *Madlock v. State*, No. 13-16-00388-CR, slip op. (Tex. App. Corpus Christi–Edinburg 2018, pet. ref'd). The Texas Court of Criminal Appeals refused Madlock's petition for discretionary review on May 2, 2018. *Madlock v. State*, PDR No. 174-18 (Tex. Crim. App. 2018). Madlock

---

[1] "SHCR-01" refers to the clerk's record of state habeas pleadings in *Ex parte Madlock*, No. 88,894-01, and is followed by the applicable page numbers.

[2] Madlock's punishments were enhanced to automatic life sentences due to his previous conviction for the felony offense of indecency with a child. *See* Tex. Penal Code Ann. § 12.42(c)(2) (West, Westlaw through 2017 1st C.S.).

filed a state habeas application challenging his conviction and it was denied without written order on September 26, 2018. SHCR-01, at Action Taken. This proceeding followed on or around October 4, 2018. ECF 1, at 10.

## II. Statement of the Facts

On appeal, the state court summarized the facts related to Madlock's claim as follows:

> Appellant was being held in a Bexar County Jail on a probation violation when his three children were taken into custody by the Department of Family and Protective Services (DFPS). The children had been living with appellant's wife, but they were taken by DFPS due to unsanitary home conditions. While they were living in a shelter, two of the children acted out in a sexual manner. As a result, all three children were taken for a forensic interview at a Child Advocacy Center, and all three children stated that appellant had sexual contact with them.
>
> On December 5, 2014, Detective Danny Dufur questioned appellant at the Bexar County Jail about the children's statements and recorded the interview. Detective Dufur read appellant his Miranda warnings, and appellant acknowledged that he understood his rights and voluntarily waived them. After speaking for around forty-five minutes, appellant made the following statement:
>
>> I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.
>
> Detective Dufur sought clarification from appellant on whether he wanted to end the interview, and appellant responded that he would continue to talk. Appellant then made incriminating

3

statements admitting to having sexual contact with his children. He was subsequently indicted and brought to trial. At trial, the State sought to introduce the audio recording of the interview, and appellant objected to its admission. A hearing was held outside the presence of the jury, and the following exchange took place between the trial court and appellant's trial counsel in regard to the objection:

> [The Court]: Well, don't you agree that the law - it has to be an unequivocal invocation of his right to counsel?
>
> [Trial counsel]: And, of course, it's our position that it is. He said he wanted a lawyer before he went out and-
>
> [The Court]: Said he would like -
>
> [Trial counsel]: - it had to do with his wife
>
> [The Court]: I thought he said, for the sake of my wife, I would like to have an attorney present.
>
> [Trial counsel]: Right. I think that's unequivocal. I don't think he has to state his reasons, even, for having a lawyer.
> . . .
>
> [The Court]: All right. Well, in that case, just using plain rules of grammar and English and syntax, he qualified his request for an attorney for the sake of his wife, not for the sake of him - for his prosecution. And that's certainly not an unequivocal request for an attorney to protect his rights.

The trial court overruled appellant's objection and admitted the incriminating statements into evidence. Appellant's trial counsel then placed his objection on the record and stated:

> In regard to the legal issue . . . the defendant objects to the introduction of all incriminating statements concerning this case for the reason that the defendant requested a lawyer pursuant to Article 38.22 and to his

4

> rights pursuant to Miranda, the 6th and 5th Amendment to the United States Constitution, and the corresponding amendments to the Texas Constitution. And we object to the Court's introduction, thereof, for reason that those rights were violated as well as his rights to due process of law and due course of law both with regard to the United States Constitution and the Texas Constitution.

The jury convicted appellant on all charges, and the trial court sentenced him to life without parole for each count. See TEX. PENAL CODE ANN. §§ 12.42, 21.11, 22.021 (West, Westlaw through 2017 1st C.S.).

*Madlock v. State*, slip op. at 2-4 (footnotes omitted).

## STATE COURT RECORDS

Records of Madlock's trial, appeal, and state habeas proceedings have been filed with the Court.

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

The Director believes that Madlock's claim is exhausted. 28 U.S.C. § 2254(b). The petition is not barred by limitations or subject to the successive petition bar. 28 U.S.C. § 2244(d); 28 U.S.C. § 2244(b).

## ANSWER

### I.  Standard of Review

Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in state criminal justice systems, not a substitute for ordinary error correction through appeal. For claims that were adjudicated in state court, § 2254(d) imposes a highly deferential standard that demands a federal court grant habeas relief only where one of two conditions are present in the state court judgment. A federal court may grant relief if the state court

5

adjudicated a constitutional claim contrary to, or unreasonably applied clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011) (citing *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2002)). Or the court may grant relief if the state court decision was based on an unreasonable determination of facts in light of the record. *Id.* Section 2254(d)'s standard is necessarily difficult to meet because it was so designed.

A state court decision can be "contrary" to established federal law in two ways. *(Terry) Williams*, 529 U.S. at 405–06. First, if the state court applies a rule that contradicts Supreme Court precedent. *Id.* at 405. Second, if the state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent, but reaches an opposite result. *Id.* at 406. A state court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *(Terry) Williams*, 529 U.S. at 406. A state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. The focus of this test is not on the state court's method of reasoning, but rather on its ultimate legal conclusion. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) ("It seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision.").

To determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . .

could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 87. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. Id. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, in reviewing a state court's merits adjudication for reasonableness, a federal court is limited to the record that was before the state court. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## II. The State Court Reasonably Denied Madlock's Trial Court Error Claim.

Madlock claims that the trial court erred when it overruled his objection and admitted into evidence incriminating statements that he had made to investigators, because they were made in violation of *Miranda*. 384 U.S. at 469-73. ECF 1, at 6; ECF 2. For the following reasons the state court's denial of relief on this claim was reasonable and this Court should also deny relief.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Thus, trial court error under state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Only those errors that violate "those 'fundamental conceptions

7

of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency,'" will render a trial fundamentally unfair. *Id.* at 353 (citing *United States v. Lovasco*, 493 U.S. 783, 790 (1977)); *see also Menzies v. Procunier*, 743 F.2d 281, 288 (5th Cir. 1984) ("An unfair trial has been characterized as one that has been 'largely robbed of dignity due a rational process'") (quoting *Houston v. Estelle*, 569 F.2d 372, 383 (5th Cir. 1978)).

Moreover, on federal habeas review of state court convictions, a federal harmless error standard applies. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Fry v. Pliler*, 127 S.Ct. 2321, 2328 (2007) (holding that the *Brecht* standard applies in all § 2254 proceedings). Therefore, to be actionable, the trial court error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Madlock raised his trial court error claim on appeal and the state court found:

### A. Standard of Review & Applicable Law

An individual subject to custodial interrogation has a Fifth Amendment right to consult with an attorney and to have counsel present during questioning. *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966); *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (West, Westlaw through 2017 1st C.S.). The invocation of this right must be clear and unambiguous, and the mere mention of the word "attorney" or "lawyer" without more does not automatically invoke it. *Dinkins v. State*, 894 S.W.2d 330,351 (Tex. Crim. App. 1995) (en banc). If a suspect clearly and unequivocally asserts his right to have counsel present, then law enforcement officers must immediately stop questioning him. *Edwards v. Arizona*, 451 U.S. 477,485 (1981); *Dinkins*, 894 S.W.2d at 350-51. But, "if a suspect

makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking his right to counsel, [it does] not require the cessation of questioning." *Davis v. U.S.*, 512 U.S. 452, 455 (1994) (emphasis in original).

When reviewing alleged invocations of the right to counsel, we typically look at the totality of the circumstances surrounding the interrogation, as well as the contents of the alleged invocation, in order to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *State v. Gobert*, 275 S.W .3d 888, 892 (Tex. Crim. App. 2009); *Dinkins*, 894 S.W.2d at 351. The inquiry into whether a suspect has invoked his right to counsel is an objective one, i.e., "the suspect must articulate [a] desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Gobert*, 275 S.W.3d at 892-93 (quoting *Davis*, 512 U.S. at 458-59).

## B. Invocation of Right to Counsel

By his first sub-issue, appellant argues that his objection to the admission of his incriminating statements should have been sustained because he invoked his right to counsel.

As noted, a defendant's invocation of his right to counsel must be clear and unambiguous, and we must look at the totality of the circumstances for the purpose of our review. *Gobert*, 275 S.W.3d 892; *Dinkins*, 894 S.W.2d at 351. In other words, not every mention of a lawyer by a suspect will trigger the Fifth Amendment right to the presence of counsel during questioning. *Gobert*, 275 S.W .3d at 892; *see, e.g., Hartwell v. State*, 476 S.W.3d 523,531 (Tex. App.-Corpus Christi 2015, pet. refd) (holding that defendant did not invoke right to counsel by asking, "should I maybe call my attorney friend and see what he thinks?"); *Mbugua v. State*, 312 S.W.3d 657,665 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd) (holding that defendant did not invoke right to counsel by asking, "Can I wait until my lawyer gets here?"); *see also In re H. V.*, 252 S.W.3d 319, 325 (Tex. 2008) (noting that defendant does not invoke right to counsel by saying, "Maybe I should talk to a lawyer," "I might want to talk to a lawyer," "I think I need a lawyer," "Do you think

9

I need an attorney here?" or "I can't afford a lawyer but is there any way I can get one?").

Here, we find relevant the following exchanges between appellant and Detective Dufur:

> [Dufur]: When we talk about the children, we want them to grow, we want them to heal, we want them to become good citizens, basically, in society. Okay. If we stopped their progress right now, they wouldn't heal, they wouldn't grow up to be something of good. Okay. Because they are still living back in the past, and they've got the issues of their childhood. And you've heard of it before. Okay. So now is where the point where we change these children, and hopefully get them to grow to be happy, to live the life that you want them to live-
>
> [Appellant]: - With their mother?
>
> [Dufur]: Okay. Possibly. You know, I don't know that. Unfortunately, I don't know work for [DFPS], so I don't have any of those, those controls, over - because they do the child protective services, they do the removals, and the safety plans, and all that. I don't do that, but they do. Is this the best environment for the child? With the mom?
>
> [Appellant]: Yeah.
>
> . . .
>
> [Dufur]: I know I'm telling ya - I know I'm talking a lot to you. And, I see, man to man I see you hurt. I see the pain in you, Scott.
>
> [Appellant]: I don't want the kids taken from my wife.
>
> [Dufur]: And I understand that. I do. Maybe that's something we can work on. That's something I can talk to [DFPS] about, Scott.

10

[Appellant]: I'm not going to blow smoke up your butt, I – whatever they say I just want to say no contest to. I put my hands up in the air. I'm not going to argue. I'm not going to take my kids to trial. I'm not going to put my wife through all that.

[Dufur]: What the children, obviously they're telling me, hey, this is not a one time incident. Was it just a one time incident?

[Appellant]: No.

[Dufur]: How long has this been going on?

[Appellant]: Months, months.

[Dufur]: Are we talking months, are we talking years?

[Appellant]: A month.

[Dufur]: What is happening? All you can do is move forward. I'm here to listen to you, Scott. I'm here to explain. I'll shut up, and I'll listen.

[Appellant]: I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.

[Dufur]: Let me - let me cut you off real quick, okay. Let me explain to you. You said you want an attorney present. That's your right. You have that right. And I want to make sure that you're clear, that if you want an attorney present, I can't talk to you anymore, okay. I feel that you explaining your side of the story has

nothing to do with hurting or helping your wife, okay. I don't think it will hurt your wife, I don't know - because like you said, she didn't have anything to do with it and I've talked to her, okay. And I've told, you know, I don't have control over the children but I do work closely with [DFPS] and I'm able to communicate with them, alright. But in order to talk to you anymore, you know once you bring up the attorney thing, I can't. I can't hear what you have to say unless you want me to, okay. But with that said, do you want to talk to me anymore, right now or do you want ....

[Appellant]: I just don't know what else to say

[Dufur]: The biggest thing is - is to let the children know that they're not on their own, okay- that things are true and that- man what do you, what do, what do you tell them. They just want to know.

[Appellant]: But to hear the words of what they said coming out of my mouth makes me want to vomit.

[Dufur]: I understand that.

[Appellant]: I don't wish to speak, I don't want to go down that road again. I don't want to go there anymore. I mean there is a reason I am not supposed to be around them. I'll admit, I'm not going to lie.

[Dufur]: You're a good person Scott.

[Appellant]: No I'm not.

[Dufur]: You just have - problems man.

[Appellant]: Look at what I did to my own kids.

[Dufur]: I know. But they're going to be okay. I know they are. I seen it. I seen that they're going to be okay. They're young, too. So that's, that's a good thing.

> [Appellant]: Oh, God.
>
> [Dufur]: Do you want to talk to me anymore, at all?
>
> [Appellant]: Fine. I'll talk. I'll talk. I'll talk.
>
> [Dufur]: Is that okay with you?
>
> [Appellant]: That's fine.

Appellant argues that he invoked his right to counsel when he said: "I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment." The State argues that by stating that the reason he wanted an attorney was "for the sake of my wife", appellant's request became ambiguous as to whether he was trying to get a lawyer for his wife or for his own purposes. We agree with the State.

The ambiguity in appellant's statement is especially evident after reviewing the totality of the circumstances, *see Gobert,* 275 S.W.3d at 892, from which we note the following: (1) appellant was read his *Miranda* warnings and voluntarily waived his right to an attorney, (2) DFPS had originally taken the children from appellant's wife's care, (3) the interviewing officer and appellant were aware of this fact, (4) statements made by appellant during the interview could expose his wife to criminal or civil consequences, *see* TEX. FAM. CODE ANN. § 161.001 (West, Westlaw through 2017 1st C.S.) (actions resulting in involuntary termination of parent-child relationship); TEX. PENAL CODE ANN. § 22.041 (West, Westlaw through 2017 1st C.S.) (actions constituting abandoning or endangering a child), and (5) during the portion of the interview that preceded the alleged invocation, appellant repeatedly expressed concern for his wife and any prejudice this might bring to her, while not denying the children's statements or his guilt. These factors accentuate the qualifying phrase "for the sake of my wife" and make appellant's statement ambiguous as to his request for an attorney. *See Luna v.* State, 301 S.W.3d 322, 325 (Tex. App.- Waco 2009, no pet.) ("Ambiguity exists when the suspect's statement is subject to more than one

> reasonable interpretation under the circumstances."); *see also Davis,* 512 U.S. at 460-61 ("A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted.").
>
> Furthermore, after appellant's alleged invocation, Detective Dufur attempted to clear up the ambiguity-something which he was not prohibited from doing. *Berghuis v. Thompkins,* 560 U.S. 370, 381 (2010) (quoting *Davis,* 512 U.S. at 455) ("If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'"); *see also Davis,* 512 U.S. at 462 ("Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to the subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel."). Appellant responded by stating that he wanted to continue the interview.
>
> Therefore, after reviewing the totality of the circumstances from the objective standpoint of a reasonable officer in Detective Dufur's position, we conclude that appellant did not make a clear and unambiguous invocation of the right to counsel. *See Dinkins,* 894 S.W.2d at 351.
>
> We overrule appellant's first sub-issue.

*Madlock v. State*, slip op. at 4-10. Because the state appellate court decision is consistent with *Miranda*, it was not in conflict with clearly established federal law. Madlock has not demonstrated any trial court error, much less that which deprived him of fundamental fairness. *See Skillern*, 720 F.2d at 852; *Brown*, 419 F.3d at 376. Moreover, in light of the overwhelming evidence against him, Madlock cannot demonstrate that, if the trial court erred, such error "had substantial and injurious effect or influence in determining the jury's verdict."

14

*Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776); *Appellee's (State's) Brief*, at 10-17 (detailing the facts of the offenses). This Court should deny relief.

## CONCLUSION

For the above reasons, the Director requests that the petition be denied and dismissed with prejudice, and that no certificate of appealability issue.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*Lead Counsel

/s/ Jessica Manojlovich
JESSICA MANOJLOVICH*
Assistant Attorney General
State Bar No. 24055632

P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

     I do hereby certify that a true and correct copy of the above and foregoing pleading has been served by placing the same in the United States Mail, postage prepaid, on this the 19th day of December, 2018, addressed to:

Scott Paul Madlock
TDCJ No. 2074132
Robertson Unit
12071 FM 3522
Abilene, TX 79601

                                          /s/ Jessica Manojlovich
                                          JESSICA MANOJLOVICH
                                          Assistant Attorney General