FILED

AUG 21 2019

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                 DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SCOTT PAUL MADLOCK, TDCJ No. 02074132, | § § § | |
| Petitioner, | § § | |
| v. | § § | Civil No. SA-18-CA-01083-OLG |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are *pro se* Petitioner Scott Paul Madlock's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support (ECF No. 2), Respondent's Answer (ECF No. 21), and Petitioner's Reply (ECF No. 23). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

In May 2015, Petitioner was charged by indictment with four counts of aggravated sexual assault of a child younger than six years of age and one count of indecency with a child by contact. (ECF No. 10-5 at 4-7). A jury subsequently convicted Petitioner of each count alleged in the indictment and he was sentenced by the trial court to five consecutive life sentences. *State v. Madlock*, No. CR2015-191 (207th Dist. Ct., Comal Cnty., Tex. May 18, 2016) (ECF No. 11-1 at 12-26). His convictions and sentences were affirmed on direct appeal, and the Texas Court of

Criminal Appeals (TCCA) refused his petition for discretionary review (PDR) on May 2, 2018. *Madlock v. State*, No. 13-16-00388-CR (Tex. App.—Corpus Christi-Edinburg, Jan. 11, 2018, pet. ref'd) (ECF No. 10-4); *Madlock v. State*, No. PD-0174-18 (Tex. Crim. App.). On July 16, 2018, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court convictions and sentences which was later denied by the TCCA without written order on September 26, 2018. *Ex parte Madlock*, No. 88,894-01 (Tex. Crim. App.) (ECF Nos. 14-8; 18-1).

Petitioner initiated the instant proceedings on October 4, 2018, when he placed his form petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 in the prison mailing system. (ECF No. 1 at 10). In the petition and supplemental memorandum, Petitioner raises only one allegation: the trial court erred in admitting into evidence his incriminating statements to police in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981) and *Miranda v. Arizona*, 384 U.S. 436 (1966). In her answer, Respondent relies exclusively on the state court's adjudication of this allegation on direct appeal and argues federal habeas relief is precluded under the AEDPA's deferential standard. (ECF No. 21).

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state

2

court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Analysis

Petitioner contends the admission of statements to police violated his Fifth Amendment rights to remain silent and have counsel present during questioning. According to Petitioner, he

unequivocally invoked his right to counsel prior to giving his confession to police but was ignored. Petitioner's allegation was rejected by the state appellate court on direct appeal and again by the TCCA when it refused Petitioner's PDR. As discussed below, Petitioner fails to show that either court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.

A.     **Relevant Facts**

The relevant facts surrounding Petitioner's confession to police were accurately summarized by the Thirteenth Court of Appeals during the direct appeal proceeding:

> [Petitioner] was being held in a Bexar County Jail on a probation violation when his three children were taken into custody by the Department of Family and Protective Services (DFPS). The children had been living with [Petitioner]'s wife, but they were taken by DFPS due to unsanitary home conditions. While they were living in a shelter, two of the children acted out in a sexual manner. As a result, all three children were taken for a forensic interview at a Child Advocacy Center, and all three children stated that [Petitioner] had sexual contact with them.
>
> On December 5, 2014, Detective Danny Dufur questioned [Petitioner] at the Bexar County Jail about the children's statements and recorded the interview. Detective Dufur read [Petitioner] his *Miranda* warnings, and [Petitioner] acknowledged that he understood his rights and voluntarily waived them. After speaking for around forty-five minutes, [Petitioner] made the following statement:
>
>> I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.
>
> Detective Dufur sought clarification from [Petitioner] on whether he wanted to end the interview, and [Petitioner] responded that he would continue to talk. [Petitioner] then made incriminating statements admitting to having sexual contact with his children. He was subsequently indicted and brought to trial.
>
> At trial, the State sought to introduce the audio recording of the interview, and [Petitioner] objected to its admission. A hearing was held outside the

4

presence of the jury, and the following exchange took place between the trial court and [Petitioner]'s trial counsel in regard to the objection:

> [The Court]: Well, don't you agree that the law—it has to be an unequivocal invocation of his right to counsel?
>
> [Trial counsel]: And, of course, it's our position that it is. He said he wanted a lawyer before he went out and—
>
> [The Court]: Said he would like—
>
> [Trial counsel]: —it had to do with his wife
>
> [The Court]: I thought he said, for the sake of my wife, I would like to have an attorney present.
>
> [Trial counsel]: Right. I think that's unequivocal. I don't think he has to state his reasons, even, for having a lawyer.
>
> . . .
>
> [The Court]: All right. Well, in that case, just using plain rules of grammar and English and syntax, he qualified his request for an attorney for the sake of his wife, not for the sake of him—for his prosecution. And that's certainly not an unequivocal request for an attorney to protect his rights.

The trial court overruled [Petitioner]'s objection and admitted the incriminating statements into evidence. [Petitioner]'s trial counsel then placed his objection on the record and stated:

> In regard to the legal issue . . . the defendant objects to the introduction of all incriminating statements concerning this case for the reason that the defendant requested a lawyer pursuant to Article 38.22 and to his rights pursuant to *Miranda*, the 6th and 5th Amendment to the United States Constitution, and the corresponding amendments to the Texas Constitution. And we object to the Court's introduction, thereof, for reason that those rights were violated as well as his rights to due process of law and due course of law both with regard to the United States Constitution and the Texas Constitution.

       The jury convicted [Petitioner] on all charges, and the trial court sentenced him to life without parole for each count. *See* Tex. Penal Code Ann. §§ 12.42, 21.11, 22.021 (West, Westlaw through 2017 1st C.S.).

*Madlock v. State*, 2018 WL 360044, at *1-2 (footnotes omitted); (ECF No. 10-4).

### B.   Reviewing Claims Under *Miranda*

It has long been established that the Fifth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent. *Edwards*, 451 U.S. at 484-86; *Miranda*, 384 U.S. at 474 (holding that once a defendant asserts his right to counsel during a custodial interrogation the interview "must cease until an attorney is present."). When an accused invokes his right to counsel, any statements obtained during subsequent police-initiated custodial questioning regarding the charge at issue are inadmissible. *Edwards*, 451 U.S. at 484 (finding that a defendant does not waive his Fifth Amendment rights simply by responding to further police-initiated custodial interrogation); *see also Montejo v. Louisiana*, 556 U.S. 778 (2009) (holding the same in the context of a Sixth Amendment violation).

However, as the Fifth Circuit has previously determined, "the word 'attorney' has no talismanic qualities. A defendant does not invoke his right to counsel any time the word falls from his lips." *United States v. Cruz*, 22 F.3d 96, 98 (5th Cir. 1994) (citation omitted). Rather, for a defendant to fully invoke his rights under *Miranda*, he must make an unambiguous statement "that can be reasonably construed to be an expression of a desire for the assistance of an attorney." *Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Although he need not "speak with the discrimination of an Oxford don," a suspect must nevertheless clearly articulate his desire to have an attorney present. *Id.* at 595 (emphasis added). If an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the

6

interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (citing *Davis*, 512 U.S. at 459). As such, a reviewing court must look to the "totality of the circumstances" to ascertain whether a defendant unambiguously invoked his constitutional right to counsel. *See United States v. Laury*, 985 F.2d 1293, 1315 (5th Cir. 1993) (citing *United States v. McClure*, 786 F.2d 1286, 1289 (5th Cir. 1986)).

C.  **Application of the *Miranda* Standard**

Petitioner raised his *Miranda* allegation during his direct appeal proceedings, but the TCCA refused Petitioner's PDR without written order. Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018); *Uranga v. Davis*, 82 F.3d 282, 287 n.33 (5th Cir. 2018). In other words, the Court must look to the last reasoned state judgment that considered and rejected Petitioner's *Miranda* allegation when reviewing the claim under AEDPA's deferential standard. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

In this case, the last reasoned state court decision was issued by the intermediate court of appeals. *Madlock*, 2018 WL 360044, at *2-5; (ECF No. 10-4). After setting forth the relevant standard for determining whether an individual invoked his right to counsel under *Miranda*, the court concluded Petitioner did not clearly and unambiguously invoke his right to counsel during his interview with police:

> By his first sub-issue, [Petitioner] argues that his objection to the admission of his incriminating statements should have been sustained because he invoked his right to counsel.
>
> As noted, a defendant's invocation of his right to counsel must be clear and unambiguous, and we must look at the totality of the circumstances for the purpose of our review. *Gobert*, 275 S.W.3d 892; *Dinkins*, 894 S.W.2d at 351. In

7

other words, not every mention of a lawyer by a suspect will trigger the Fifth Amendment right to the presence of counsel during questioning. *Gobert*, 275 S.W.3d at 892; *see, e.g., Hartwell v. State*, 476 S.W.3d 523, 531 (Tex. App.–Corpus Christi 2015, pet. ref'd) (holding that defendant did not invoke right to counsel by asking, "should I maybe call my attorney friend and see what he thinks?"); *Mbugua v. State*, 312 S.W.3d 657, 665 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd) (holding that defendant did not invoke right to counsel by asking, "Can I wait until my lawyer gets here?"); *see also In re H.V.*, 252 S.W.3d 319, 325 (Tex. 2008) (noting that defendant does not invoke right to counsel by saying, "Maybe I should talk to a lawyer," "I might want to talk to a lawyer," "I think I need a lawyer," "Do you think I need an attorney here?" or "I can't afford a lawyer but is there any way I can get one?").

Here, we find relevant the following exchanges between [Petitioner] and Detective Dufur:

> [Dufur]: When we talk about the children, we want them to grow, we want them to heal, we want them to become good citizens, basically, in society. Okay. If we stopped their progress right now, they wouldn't heal, they wouldn't grow up to be something of good. Okay. Because they are still living back in the past, and they've got the issues of their childhood. And you've heard of it before. Okay. So now is where the point where we change these children, and hopefully get them to grow to be happy, to live the life that you want them to live—
>
> [Petitioner]: —With their mother?
>
> [Dufur]: Okay. Possibly. You know, I don't know that. Unfortunately, I don't know work for [DFPS], so I don't have any of those, those controls, over— because they do the child protective services, they do the removals, and the safety plans, and all that. I don't do that, but they do. Is this the best environment for the child? with the mom?
>
> [Petitioner]: Yeah.
>
> . . .
>
> [Dufur]: I know I'm telling ya—I know I'm talking a lot to you. And, I see, man to man I see you hurt. I see the pain in you, Scott.
>
> [Petitioner]: I don't want the kids taken from my wife.

[Dufur]: And I understand that. I do. Maybe that's something we can work on. That's something I can talk to [DFPS] about, Scott.

. . .

[Petitioner]: I'm not going to blow smoke up your butt, I— whatever they say I just want to say no contest to. I put my hands up in the air. I'm not going to argue. I'm not going to take my kids to trial. I'm not going to put my wife through all that.

. . .

[Dufur]: What the children, obviously they're telling me, hey, this is not a one time incident. Was it just a one time incident?

[Petitioner]: No.

[Dufur]: How long has this been going on?

[Petitioner]: Months, months.

[Dufur]: Are we talking months, are we talking years?

[Petitioner]: A month.

[Dufur]: What is happening? All you can do is move forward. I'm here to listen to you, Scott. I'm here to explain. I'll shut up, and I'll listen.

. . .

[Petitioner]: I guess I do have issues, I ain't going to lie. And you're right, they do progress and become even worse and worse and worse. As far as the details, I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment. She was never even around anyway so that's why I said she has nothing to do with this.

[Dufur]: Let me—let me cut you off real quick, okay. Let me explain to you. You said you want an attorney present. That's your right. You have that right. And I want to make sure that you're clear, that if

9

|               | |
|---------------|---|
|               | you want an attorney present, I can't talk to you anymore, okay. I feel that you explaining your side of the story has nothing to do with hurting or helping your wife, okay. I don't think it will hurt your wife, I don't know—because like you said, she didn't have anything to do with it and I've talked to her, okay. And I've told, you know, I don't have control over the children but I do work closely with [DFPS] and I'm able to communicate with them, alright. But in order to talk to you anymore, you know once you bring up the attorney thing, I can't. I can't hear what you have to say unless you want me to, okay. But with that said, do you want to talk to me anymore, right now or do you want . . . |
| [Petitioner]: | I just don't know what else to say |
| [Dufur]:      | The biggest thing is—is to let the children know that they're not on their own, okay—that things are true and that—man what do you, what do, what do you tell them. They just want to know. |
| [Petitioner]: | But to hear the words of what they said coming out of my mouth makes me want to vomit. |
| [Dufur]:      | I understand that. |
| [Petitioner]: | I don't wish to speak, I don't want to go down that road again. I don't want to go there anymore. I mean there is a reason I am not supposed to be around them. I'll admit, I'm not going to lie. |
| [Dufur]:      | You're a good person Scott. |
| [Petitioner]: | No I'm not. |
| [Dufur]:      | You just have—problems man. |
| [Petitioner]: | Look at what I did to my own kids. |
| [Dufur]:      | I know. But they're going to be okay. I know they are. I seen it. I seen that they're going to be okay. They're young, too. So that's, that's a good thing. |
| [Petitioner]: | Oh, God. |
| [Dufur]:      | Do you want to talk to me anymore, at all? |

[Petitioner]:   Fine. I'll talk. I'll talk. I'll talk.

[Dufur]:   Is that okay with you?

[Petitioner]:   That's fine.

[Petitioner] argues that he invoked his right to counsel when he said: "I would like to have an attorney present please just for the sake of my wife because I don't want to put her or say something stupid that would put her in a position of being considered endangerment." The State argues that by stating that the reason he wanted an attorney was "for the sake of my wife", [Petitioner]'s request became ambiguous as to whether he was trying to get a lawyer for his wife or for his own purposes. We agree with the State.

The ambiguity in [Petitioner]'s statement is especially evident after reviewing the totality of the circumstances, *see Gobert*, 275 S.W.3d at 892, from which we note the following: (1) [Petitioner] was read his *Miranda* warnings and voluntarily waived his right to an attorney, (2) DFPS had originally taken the children from [Petitioner]'s wife's care, (3) the interviewing officer and [Petitioner] were aware of this fact, (4) statements made by [Petitioner] during the interview could expose his wife to criminal or civil consequences, *see* Tex. Fam. Code Ann. § 161.001 (West, Westlaw through 2017 1st C.S.) (actions resulting in involuntary termination of parent-child relationship); Tex. Penal Code Ann. § 22.041 (West, Westlaw through 2017 1st C.S.) (actions constituting abandoning or endangering a child), and (5) during the portion of the interview that preceded the alleged invocation, [Petitioner] repeatedly expressed concern for his wife and any prejudice this might bring to her, while not denying the children's statements or his guilt. These factors accentuate the qualifying phrase "for the sake of my wife" and make [Petitioner]'s statement ambiguous as to his request for an attorney. *See Luna v. State*, 301 S.W.3d 322, 325 (Tex. App.–Waco 2009, no pet.) ("Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances."); *see also Davis*, 512 U.S. at 460-61 ("A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted.").

Furthermore, after [Petitioner]'s alleged invocation, Detective Dufur attempted to clear up the ambiguity—something which he was not prohibited from doing. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (quoting *Davis*, 512 U.S. at 455) ("If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'"); *see also Davis*, 512 U.S. at 462 ("Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to the subsequent judicial second-guessing as to the meaning of the suspect's

statement regarding counsel."). [Petitioner] responded by stating that he wanted to continue the interview.

Therefore, after reviewing the totality of the circumstances from the objective standpoint of a reasonable officer in Detective Dufur's position, we conclude that [Petitioner] did not make a clear and unambiguous invocation of the right to counsel. *See Dinkins*, 894 S.W.2d at 351.

We overrule [Petitioner]'s first sub-issue.

*Madlock*, 2018 WL 360044, at *2-5; (ECF No. 10-4).

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. A state appellate court's determination is entitled to great deference when, as was done in this case, the court conducted a thorough and thoughtful review of the evidence. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). Here, regardless of whether the Court ultimately agrees with the conclusion that Petitioner's invocation of counsel was ambiguous, there is no doubt the state court's review was exhaustive, and Petitioner has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Thus, viewing the record and pleadings under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his *Miranda* allegation.

**D.     Harmless Error**

Regardless, even assuming that the trial court erred in admitting the recorded statement, Petitioner would still not be entitled to relief because the error was harmless. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding that the admission of an involuntary confession is subject to harmless error analysis); *Hopkins v. Cockrell*, 325 F.3d 579, 585 (5th Cir. 2003)

(same). In order to be entitled to federal habeas relief, the error must have had "substantial and injurious effect or influence in determining the jury's verdict." *Hopkins*, 325 F.3d at 585 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Petitioner does not make this showing. In fact, the record indicates Petitioner's post-invocation confession was just a small part of the overwhelming evidence presented at trial establishing Petitioner's repeated sexual abuse of his children, Z.M. (five years old), A.M. (four years), and L.M. (three years).

To start, Petitioner's oldest son, Z.M., testified in great detail about the numerous acts of sexual abuse Petitioner committed against him and his siblings. Several other witnesses corroborated Z.M.'s testimony, including Detective Dufur, forensic interviewer Susan White, forensic nurse Janie Mott, and Child Protective Services investigator Laura Henley, each of whom described Z.M.'s prior outcry statements. These witnesses also described outcries made by Z.M.'s little brother, A.M., and little sister, L.M., about acts of sexual abuse committed by their father. In addition, to establish these acts were in conformity with Petitioner's character, the State presented Leesa Chapa, Petitioner's former probation officer, who testified that Petitioner previously admitted to sexually abusing his seven-year-old stepdaughter on several occasions and was placed on probation for the offense of indecency with a child.

Petitioner also made damaging inculpatory statements to Detective Dufur before attempting to invoke his right to an attorney. As discussed previously, prior to stating he would like to have an attorney present for the sake of his wife, Petitioner stated he was not going to contest his children's allegations and admitted the abuse was not a one-time incident but had been going on for months. Thus, in light of the strong amount of evidence presented in this case demonstrating Petitioner's guilt other than his post-invocation confession, any error in admitting

the confession was harmless and had no prejudicial effect on the jury's ultimate guilty verdict.[1] *Brecht*, at 637. Federal habeas relief is therefore denied.

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claim on the merits during his direct appeal proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of

---

[1] Any error in admitting the confession also had no prejudicial effect on Petitioner's punishment because Texas law mandated a life sentence for each of Petitioner's offenses due to his prior conviction for indecency with a child. *See* Tex. Penal Code § 12.42(c)(2).

the evidence presented during Petitioner's state trial and appellate proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Scott Paul Madlock's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the ___21___ day of August, 2019.

_____
**ORLANDO L. GARCIA**
**Chief United States District Judge**